# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

U.S. ... COURT ... ... 20 ... 3:13 ... SO. DIST. OF GA.

| | | |
|---|---|---|
| MARIETTA SAMPSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| EQUIFAX INFORMATION | : | |
| SERVICES, LLC, | | |
| | : | |
| Defendant. | | NO. CV204-187 |

## O R D E R

Plaintiff, Marietta Sampson, filed this action against Defendant, Equifax Information Services, LLC ("Equifax"), asserting violations of the Fair Credit Reporting Act, codified at 15 U.S.C.A. §§ 1681-1681x ("FCRA"). The case is before the Court on the parties' cross-motions for summary judgment. Because genuine issues of material fact remain in dispute, the motions will be **DENIED**.

## BACKGROUND

Equifax is a credit reporting agency, and it operates an automated credit reporting system. Under this system, the company does not investigate the accuracy of consumers' account information submitted by creditors upon receipt. According to Equifax, it presumes that the information submitted is accurate because it endeavors to do business only with reputable merchants and financial institutions. According to Lisa Willis, a supervisor in Equifax's Office of Consumer Affairs, if a consumer disputes a credit item, Equifax initiates an investigation of the disputed information.

In early 2004, Sampson contends that she discovered that her Equifax credit report contained false information, indicating that she was indebted to Providian Bancorp and The Money Tree. Another account that Sampson disputed was a Unifund Corporation collections account relating to the purported Providian debt. According to Sampson, The Money Tree brought suit against her three times to collect her alleged debt. Sampson reported that, although she answered each suit, The Money Tree failed to appear to prosecute the suit twice and, on the third occasion, judgment was rendered in her favor.

AO 72A
(Rev. 8/82)

On March 18, 2004, Sampson wrote three letters, one regarding each account, to notify Equifax that she disputed the account information, and to demand that the accounts be removed from her file. Although Sampson sent the letters by certified mail, Equifax did not remove the credit items from her report, or otherwise address her concerns. Instead, the company waited over a year to do anything about her complaints. Equifax maintains that it has no record of having received her letters, so it could not attempt to validate the debts at that time. However, Equifax does not deny that Sampson sent the letters, and a certified mail receipt shows that the letters were received by Equifax on March 22, 2004. Doc. No. 11 at 4; Doc. No. 12 at 23.

On December 6, 2004, Sampson filed her complaint with the Court. By April 4, 2005, Equifax had completed its reinvestigation of each disputed credit account. While this process did not involve Equifax considering the merits of the dispute between the creditors and Sampson, Equifax did ask the creditors to check and make sure the account information that had been submitted was accurate. After Providian Bancorp and The Money Tree verified the account information, Equifax left Sampson's credit report as to those accounts intact. The

3

collections account was deleted because Unifund failed to respond to Equifax's reinvestigation request.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor . . . ." <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal quotation marks omitted).

## DISCUSSION

When Congress enacted the FCRA in 1970, it recognized the 'vital role' that credit reporting agencies

4

assume in our economic system. 15 U.S.C.A. §
1681(a)(3) (West 1997). The FCRA reflects Congress's
concern with the 'need to insure that consumer
reporting agencies exercise their grave
responsibilities with fairness, impartiality, and a
respect for the consumer's right to privacy.' 15
U.S.C.A. § 1681(a)(4). The FCRA seeks to promote the
credit reporting industry's responsible dissemination
of accurate and relevant information. <u>See</u> 15
U.S.C.A. § 1681(b). . . . The willful or negligent
failure to comply with any of the FCRA's requirements
may give rise to civil liability. <u>See</u> 15 U.S.C.A. §§
1681n-1681p.

<u>Yang v. Gov't Employees Ins. Co.</u>, 146 F.3d 1320, 1322 (11th

Cir. 1998).

Sampson asserts that Equifax is liable to her under two

separate provisions of the FCRA. One provision requires

reporting agencies to follow reasonable procedures in preparing

credit reports, and the other requires reporting agencies to

undertake a reasonable investigation if a consumer disputes the

accuracy of an item on her credit report.


I.   **Whether Equifax is Liable Under § 1681e(b) is a Question
     of Fact**

THE FCRA provides: "Whenever a consumer reporting agency

prepares a consumer report it shall follow reasonable

procedures to assure maximum possible accuracy of the

information concerning the individual about whom the report

relates." 15 U.S.C.A. § 1681e(b) (1998).

AO 72A
(Rev. 8/82)

If a consumer satisfies her initial burden by presenting evidence tending to show that the reporting agency published a credit report containing inaccurate data, "[t]he agency can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures, which will be a jury question in the overwhelming majority of cases." Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991). Consequently, under Cahlin, "following reasonable procedures" is an affirmative defense that must be proven by the reporting agency. See also Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995); but see Philbin v. Trans Union Corp., 101 F.3d 957, 964-65 (3d Cir. 1996).

In Philbin, the Third Circuit considered the appellate decisions in Cahlin and Guimond, and determined that the more plausible reading of the cases does not shift the burden of proving "reasonable procedures" to the credit reporting agency. Instead, it interpreted Cahlin and Guimond as allowing the jury to infer that reasonable procedures were not followed based upon the showing of some inaccuracy. Analogizing to the doctrine of res ipsa loquitur, Philbin construed these

6

decisions as allowing the jury to reject such an inference, and the burden of proof remains with the plaintiff. _Id_. at 965.

The Court concludes that _Philbin_, perhaps in trying to narrow the divide between _Cahlin_ and _Guimond_, on the one hand, and contrary decisions describing the plaintiff's burden of proof under § 1681e(b),[1] on the other, has placed an unnatural strain on _Cahlin_'s language. The Court reads _Cahlin_ (and, less importantly, _Guimond_) as requiring the reporting agency to bear the burden of proof on this point. Indeed, _Philbin_ appears to have conceded the desirability of this approach, when it recognized that the reporting agency is "in a far better position to prove that reasonable procedures were followed than a plaintiff is to prove the opposite." _Id_.

Sampson's affidavit provides some evidence to support her contention that the credit report contained inaccurate information. According to her affidavit, The Money Tree was unsuccessful, in three different lawsuits against her, to collect her alleged indebtedness to it. Sampson Aff. ¶ 7. She also related that she has been denied credit on several

---

[1]
    _E.g._, _Sepulvado v. CSC Credit Servs., Inc._, 158 F.3d 890, 896 (5th Cir. 1998); _Dalton v. Capital Associated Indus. Inc._, 257 F.3d 409, 416 (4th Cir. 2001); _Stewart v. Credit Bureau, Inc._, 734 F.2d 47, 51 & n.5 (D.C. Cir. 1984) (consumer bears burden of proving failure to follow reasonable procedures).

AO 72A
(Rev. 8/82)

occasions as a result of the false statements contained in her Equifax credit report. Sampson Aff. ¶¶ 4-5.

Contrary to Equifax's arguments, the Court cannot credit Willis' contrary representations regarding the accuracy of the report on a motion for summary judgment. See also Philbin, 101 F.3d at 968 (the plaintiff need not depose, or take affidavits from, "those responsible for the decision" to make out a prima facie case under § 1681e(b)). The Court cannot find the report was "accurate" as a matter of law. Cahlin, 936 F.2d at 1156 (indicating that summary judgment would be proper on such a claim only if the court could so conclude). At trial, presuming that Sampson marshals enough evidence to survive a directed verdict on the inaccuracy of a credit item in her report, the burden will then shift to Equifax to prove to the jury that it followed reasonable procedures in assuring "maximum possible accuracy" in the preparation of Sampson's credit report. 15 U.S.C.A. § 1681e(b) (1998); Cahlin, 936 F.2d at 1156.

Equifax also challenges Sampson's proof of causation and damages. According to the company, any harm that Sampson suffered was not its fault, but was a result of her own habit

8

of failing to pay her bills in a timely fashion, if at all.[2] Consequently, Equifax argues, Sampson cannot prove that it caused her harm.

Yet, a plaintiff does not have to show that the inaccurate information was the only reason she was denied credit. Rather, the consumer only needs to produce evidence from which a reasonable trier of fact could infer that the inaccurate entry played a part in a decision to deny credit. Id. at 1161 (plaintiff must show that inaccuracy was "a causal factor"). The consumer need not eliminate the possibility that correct, derogatory entries also factored into the decision. See also Philbin, 101 F.3d at 969-70 (finding support for such an approach in tort and employment discrimination cases).[3]

Equifax also faults Sampson for failing to prove that she suffered damages. Defendant protests that Plaintiff's affidavit is conclusory, because she has not produced evidence

---

[2]
Willis stated that Sampson's "consumer credit file contains numerous derogatory entries," in addition to the disputed accounts, "including multiple charged of accounts, collections accounts and a repossession." Willis Aff. ¶ 12. Willis, as a supervisor in Equifax's Office of Consumer Affairs, could be a person with personal knowledge of the contents of Sampson's credit report, as she contends in her affidavit.

[3]
Equifax's reliance on Enwonwu v. Trans Union, LLC, 364 F. Supp. 2d 1361, 1367 (N.D. Ga. 2005), is misplaced, insofar as the Enwonwu court was able to determine, as a matter of law, that the inaccuracy was not a substantial factor in the denial of credit. Equifax has produced no evidence from which the Court could make such a determination.

9

of any credit denials, or even the names of the businesses that refused to extend her credit. In <u>Cahlin</u>, the court granted summary judgment because the consumer had not produced any evidence of harm. 936 F.2d at 1160-61.

Sampson argues that <u>Cahlin</u> is inapplicable because her affidavit shows that she suffered harm due to Equifax's conduct. Indeed, the Eleventh Circuit noted that "Cahlin produced no documentary or testimonial evidence to support" his allegations that he had been denied credit as a result of inaccurate information contained in his credit report. <u>Id</u>. at 1156. Here, Sampson has produced a sworn statement that she was denied credit, and has suffered emotional distress, as a result of Equifax's conduct.[4]

Rule 56(e) of the Federal Rules of Civil Procedure contemplates the use of affidavits in opposition to motions for summary judgment. As a result of Sampson's affidavit, <u>Cahlin</u> is distinguishable from the facts presented in this case. Sampson's sworn averments regarding her purported indebtedness to The Money Tree are "specific facts showing that there is a

---

[4]

In addition, Sampson asserts that the loss of credit opportunities can constitute compensable harm under § 1681e(b). Under this theory, Plaintiff claims that she was deterred from seeking credit because of the derogatory errors in her report. <u>See</u> <u>Guimond</u>, 45 F.3d at 1332 n.2 & 1333.

10

genuine issue for trial." Fed. R. Civ. P. 56(e). Again, contrary to Equifax's arguments, the Court is not empowered to judge Sampson's credibility, based on what Equifax perceives as her lack of detail in her affidavit, on a motion for summary judgment.

Moreover, Equifax questions Sampson's ability to recover for humiliation and embarrassment. Mental anguish constitutes a compensable harm under the FCRA, and emotional distress damages may be recovered even absent a denial of credit. Philbin, 101 F.3d at 963 n.3; Crane v. Transunion, LLC, 282 F. Supp. 2d 311, 319 (E.D. Pa. 2003); Guimond, 45 F.3d at 1333; Morris v. Credit Bureau of Cincinnati, Inc., 563 F. Supp. 962, 969 (S.D. Ohio 1983)(consumer awarded $10,000 for emotional distress even though he explained inaccuracies and discrepancies in his credit report and obtained credit eventually).

Nonetheless, Equifax contends that Sampson cannot recover emotional distress damages based solely on her own testimony. In Carey v. Piphus, the Supreme Court held that a plaintiff could not recover compensatory damages for emotional distress resulting from a procedural due process violation "without proof that such injury was actually caused." 435 U.S. 247, 264

11

(1978). In <u>Cousin v. Trans Union Corp.</u>, the Fifth Circuit extended <u>Carey</u> to hold that "evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others" was required before a consumer could recover compensatory damages under the FCRA for emotional distress. 246 F.3d 359, 371 (5th Cir. 2001); <u>Carey</u>, 435 U.S. at 264 n.20. Accordingly, Equifax asserts that Sampson's mental anguish claim fails because she has not produced independent evidence of emotional distress, such as medical or psychological consultations.

While Sampson need not prove that she confided her distress to a medical professional, the Court agrees that she must produce some form of independent, corroborating evidence of her humiliation and embarrassment at trial to recover compensatory damages for emotional distress. Numerous decisions have upheld a range of damages based on varying evidence in such cases. <u>See</u> <u>Guimond</u>, 45 F.3d at 1333; <u>Stevenson v. TRW Inc.</u>, 987 F.2d 288, 297 (5th Cir. 1993)(collecting cases); <u>Pinner v. Schmidt</u>, 805 F.2d 1258, 1265 (5th Cir. 1986)($25,000 for embarrassment engendered by three credit denials and protracted dealings with reporting agency); <u>Millstone v. O'Hanlon Reports, Inc.</u>, 528 F.2d 829, 834-35 (8th Cir.

AO 72A
(Rev. 8/82)

1976)($2,500 awarded after insurer cancelled policy due to an erroneous credit report); <u>Thompson v. San Antonio Retail Merchs. Ass'n</u>, 682 F.2d 509, 514 (5th Cir. 1982)($10,000 awarded for humiliation caused by the reporting agency taking several months to correct the report, and by three credit denials).

Because genuine issues of material fact remain in dispute regarding the accuracy of Sampson's credit report, the reasonableness of Equifax's procedures, causation, and the extent of Sampson's harm, summary judgment is inappropriate as to Sampson's § 1681e(b) claim.

## II. **Whether Equifax Conducted a Reasonable Investigation is a Question of Fact**

The FCRA provides that:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file . . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

15 U.S.C.A. § 1681i(a)(1)(A) (1998).

13

Equifax argues that the creditor is the party responsible for investigating the dispute, once notified of it by the reporting agency. 15 U.S.C.A. § 1681s-2(b) (1998). According to Equifax, the reporting agency's duty under § 1681i is fulfilled once it forwards the complaint to the creditor, the entity in the best position to undertake an accurate investigation.[5]   Under § 1681s-2(b), furnishers of information, such as creditors, have certain duties to investigate consumers' disputes. Yet, this does not end the inquiry, or establish that the reporting agency has no responsibility beyond serving as a conduit for consumers' complaints.

To the contrary, a credit reporting agency does not conduct a reasonable investigation by deferring entirely to another source of information. The "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997). "In a reinvestigation of the accuracy

---

[5]

Equifax also maintains that Sampson was not harmed by Equifax's conduct in failing to investigate the dispute properly, but that any damages that Sampson suffered were a result of her own irresponsible financial habits. As discussed, causation is a question of fact.

14

of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." Stevenson, 987 F.2d at 293. The FCRA "places the burden of investigation squarely on" the reporting agency. Id.; see also Henson v. CSC Credit Servs., 29 F.3d 280, 286-87 (7th Cir. 1994); Swoager v. Credit Bureau, 608 F. Supp. 972, 976 (M.D. Fla. 1985).

In Cushman, the consumer notified the credit reporting agency that certain accounts in her name had been opened fraudulently. However, the reporting agency did not delete the account information because Cushman had not opened a fraud investigation with the creditors, and because the creditors verified that the accounts listed identifying information that matched Cushman's name, social security number, and address. Id. at 222. The Third Circuit decided that there was no reasonable investigation by the reporting agency under these circumstances, when the creditors' verification of Cushman's identifying information was consistent with her complaints of fraud. Id. at 226.

As the Federal Trade Commission's advisory guidelines on the FCRA explain:

> Depending on the nature of the dispute, reinvestigation and verification may require more

than asking the original source of the disputed information the same question and receiving the same answer. If the original source is contacted for reinvestigation, the consumer reporting agency should at least explain to the source that the original statement has been disputed, state the consumer's position, and then ask whether the source would confirm the information, qualify it, or accept the consumer's explanation.

16 C.F.R. Pt. 600, App. § 611 ¶ 2.

In that same vein, <u>Cushman</u> and <u>Henson</u> have recognized that certain factors must be considered in judging the reasonableness of the reporting agency's investigation:

[I]n order to fulfill its obligation under § 1681i(a) "a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information." <u>Henson</u>, 29 F.3d at 287. . . . "[W]hether the credit reporting agency has a duty to go beyond the original source will depend" on a number of factors. <u>Id</u>. One of these is "whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable." <u>Id</u>. A second factor is "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." <u>Id</u>. Whatever considerations exist, it is for "the trier of fact [to] weigh the[se] factors in deciding whether [the defendant] violated the provisions of section 1681i." <u>Id</u>.

<u>Cushman</u>, 115 F.3d at 225-26.

Equifax maintains that its investigation was reasonable because Sampson failed to offer any basis for her disputes in her letters, such as a particular inaccuracy or an assertion

16

that the accounts were opened fraudulently. Admittedly, Sampson's letters are vague regarding her reasons for disputing the debts. As a result, the first factor mentioned by the Cushman and Henson courts may weigh in Equifax's favor.

Yet, Sampson's letters do state that "if you have any questions concerning this matter, please write me." Sampson is free to argue to the trier of fact that, to the extent Equifax needed more information to investigate her dispute properly, it should have written for clarification. If the jury agrees that Sampson's letters shifted the onus to Equifax for further inquiry, it could decide that, in weighing the costs to the reporting agency of verification against the risks to the consumer of inaccurate information in her credit report, Equifax acted unreasonably in not following up with Sampson for clarification. In short, it is a question of fact whether Equifax conducted a reasonable investigation by following its course of conduct here, without seeking more specific information from the consumer.

Beyond Equifax's investigation procedures, Sampson also challenges the company's timeliness, emphasizing that it was obliged to act within thirty days of receiving her dispute letters. 15 U.S.C.A. § 1681i(a)(1)(A) (1998). Sampson has

AO 72A
(Rev. 8/82)

produced evidence that Equifax received the letters on March 22, 2004, but failed to act on Sampson's complaints for more than a year. In agreeing that the letters were "apparently" sent, and by producing a certified mail receipt marked "Received, March 22, 2004," without further explanation, Equifax all but admits that the letters were received, but were mislaid or lost thereafter. Doc. No. 11 at 4; Doc. No. 12 at 23. If these facts are accepted by the jury as true, Equifax may be liable in damages for its negligent failure to render an investigation in the time provided by statute. 15 U.S.C.A. § 1681o (1998).

Under § 1681n, punitive damages may be imposed if the credit reporting agency acted willfully in failing to comply with any requirement imposed under the Act. To recover punitive damages, the consumer need not prove that the reporting agency acted with malice or ill will. Philbin, 101 F.3d at 970. If Equifax ignored Sampson's letters and disputed accounts on purpose, then Equifax "knowingly and consciously commit[ted] an act in conscious disregard for the rights of others[.]" Pinner, 805 F.2d at 1263.

Relevant to the punitive damages inquiry is Sampson's assertion that Equifax was served with her complaint on

AO 72A
(Rev. 8/82)

December 17, 2004. Sampson maintains that, even if Equifax was only negligent in mislaying Sampson's letters in March 2004, its delay in completing its investigation until April 4, 2005, was a willful act in violation of her rights under the statute. Sampson notes that her complaint was her second direct notification to Equifax that she disputed certain account information, and that the investigation was not completed by January 16, 2005.

Equifax has not responded to Sampson's assertion of a dilatory investigation _after_ the complaint in this case was filed, other than to deny that it had any duty to complete its investigation within thirty days under the law. Doc. No. 19 at 2. In making this argument, Equifax ignores the statutory text codified at 15 U.S.C.A. § 1681i(a)(1)(A) (1998). Considering all the facts, the Court cannot determine, as a matter of law, that punitive damages are unavailable. _See_, _e.g._, _Spector v. Equifax Info. Servs._, 338 F. Supp. 2d 378, 389 (D. Conn. 2004) ("[i]t is significant that one factor singled out as supporting a willfulness conclusion was the need for legal process to force compliance.")

In addition to Sampson's other complaints regarding the reasonableness of Equifax's investigation, she argues that once

19

Providian and The Money Tree stated that the debts were valid,
Equifax had a statutory duty to place a comment in her credit
file, noting that the accounts were disputed. In this regard,
the FCRA provides that:

> (b) Statement of dispute
> If the reinvestigation does not resolve the dispute,
> the consumer may file a brief statement setting forth
> the nature of the dispute. The consumer reporting
> agency may limit such statements to not more than one
> hundred words if it provides the consumer with
> assistance in writing a clear summary of the dispute.
>
> (C) Notification of consumer dispute in subsequent
>     consumer reports
> Whenever a statement of a dispute is filed, unless
> there is reasonable grounds to believe that it is
> frivolous or irrelevant, the consumer reporting
> agency shall, in any subsequent consumer report
> containing the information in question, clearly note
> that it is disputed by the consumer and provide
> either the consumer's statement or a clear and
> accurate codification or summary thereof.

15 U.S.C.A. § 1681i (1998).

Sampson does not contend that she filed any statement
concerning the dispute following verification by the creditors.
Neither subsection (b) nor (c) requires the credit reporting
agency to inform the consumer of her right to submit a
statement summarizing her side of the story. Guimond, 45 F.3d
at 1335; Middlebrooks v. Retail Credit Co., 416 F. Supp. 1013,
1018 (N.D. Ga. 1976). Thus, Equifax did not violate the law

20

by failing to insert a comment in her credit file noting that the accounts were disputed.

Because genuine issues of material fact remain in dispute regarding the reasonableness of Equifax's investigation, summary judgment is not warranted on Sampson's § 1681i(a)(1)(A) claim.

## CONCLUSION

For the reasons explained above, the parties' cross-motions for summary judgment are **DENIED**. <u>See</u> Doc. Nos. 11 & 16.

**SO ORDERED**, this ____29th____ day of August, 2005.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

21

# United States District Court
## *Southern District of Georgia*

ATTORNEYS SERVED:

Walter Doug Adams
Brian K. Epps

CASE NO:     CV204-187

DATE SERVED:  8/29/2005

SERVED BY:    Nita Rose

☐  Copy placed in Minutes

☐  Copy given to Judge

☐  Copy given to Magistrate